PEOPLE OF PUERTO RICO, Plaintiff and Appellee, *v.* SEVERIANO CRUZ RODRÍGUEZ, Defendant and Appellant.

No. 4236. Argued February 6, 1931.—Decided December 8, 1931.

*Buenaventura Esteves* for appellant.  *R. A. Gómez* for appellee.

MR. JUSTICE HUTCHISON delivered the opinion of the Court.

Upon an information for murder in the second degree, Severiano Cruz Rodríguez was convicted of that offense and sentenced to ten years in the penitentiary.

At the close of the evidence for the prosecution, counsel for defendant moved for an order that the information be amended so as to charge manslaughter only. The refusal of the district judge to order such amendment and to instruct the jury accordingly is now assigned as error. Another contention is that the verdict is contrary to law and not sustained by the evidence.

The first eye-witness for the government, Luis Soto, testified that he and Maximino Cruz, an uncle of Severiano, had stopped at a house about forty-five *varas* from the roadside; that Severiano was passing along the road and stopped when Maximino called; that while the two were talking Ventura Cruz, father of Severiano and brother of Maximino, arrived and entered into a discussion with Maximino and they came to blows; that Severiano who was standing a little further up then drew a weapon and wounded Maximino in the breast; that the attitude of Ventura when he arrived was haughty; that he assaulted Maximino and they grappled; that then Severiano who was standing some distance ahead came and wounded Maximino; that Maximino carried in his hands a white switch for his horse, and that he did not assault Severiano nor Ventura before he was himself assaulted by the latter.

Asked on cross-examination concerning the subject of conversation between Maximino and Severiano this witness

said that they were discussing something that had happened to Eulogio Cruz, and Maximino was telling Severiano that the family must be considered, as if giving him advice; that Maximino had left his horse at the house where witness was and had gone on foot to Severiano; that Maximino and Severiano did not come to blows; that Severiano had been talking with Maximino some little time before the father arrived; that Severiano was some three or four *cuerdas* ahead of his father; that witness could hear what passed between Maximino and Severiano at a distance of forty-five *varas* because their voices were loud; that he heard only parts of the conversation; that on hearing this, witness dismounted and approached the spot but Ventura reached it before witness did; that Ventura carried a colored rod and Maximino a white one; that Maximino lashed Ventura with his switch; that witness had said on direct examination that Maximino had not first assaulted Ventura because witness did not consider a stroke with a switch an assault; that Maximino was a strong middle-aged man and Ventura was older, an old man.

Asked on re-direct as to who was the aggressor, the same witness said that they both struck at the same time.

The next witness, Inocencio Santiago, said that Maximino and Severiano had some friendly difference when Ventura arrived and told Severiano to go on his way; that Maximino and Ventura then entered into a discussion and grappled, and Severiano sprang forward and wounded Maximino; that in the discussion between Maximino and Ventura the latter was more pacific than the former; that Maximino carried a switch with which he struck the first blow; that Ventura then grappled with Maximino and the struggle ensued; that Ventura had a rod and that Maximino's rod was the more slender of the two.

On cross-examination this witness added that he was some six or seven meters distant and that Ventura made no use of his rod.

Faustino Tirado stated that when Maximino first addressed Severiano the latter started toward the house and Maximino again said to him "wait for me there, I must talk to you"; that then Severiano stopped and Maximino went to him and they had some words which witness heard and witness went to where they were; that Ventura arrived about the same time and a discussion arose between him and Maximino; that witness came up and said to Severiano, "listen, Severiano, go on your way, stop quarreling and such things; respect my wishes and go"; that Severiano went away and the discussion between Maximino and Ventura continued, blows were exchanged and Severiano returned and wounded Maximino with a pocket-knife; that witness did not observe closely how the exchange of blows began because he was telling Severiano to go; that witness told Severiano to go because it was fighting talk, and witness did not want them to fight; that Maximino was fighting with Ventura when Severiano used the knife; that they were fighting hand to hand; that Maximino was unarmed.

Cross-examination brought out the further information that Maximino was a young man and a strong one.

To the salient features of the evidence for the prosecution we may now add the statement of Ventura Cruz as a witness for the defense. He testified that he was about sixty years of age and that his brother, Maximino, was about thirty-four or thirty-five; that Maximino was the youngest of eight children; that witness heard Maximino when he called from the roadside and said to Severiano, "wait for me there, I must talk to you"; that witness and Severiano were traveling along the same road; but at some distance from each other; that witness reached Maximino as quickly as possible and asked him what was the matter with him and Severiano, that if there was anything wrong to tell witness in order that he might reprimand Severiano; that Maximino then attacked witness and witness demanded respect, but Ma-

ximino did not heed the request; that witness carried an ausubo stick about the thickness of his finger; that Maximino grasped the stick and tried to take it from witness who resisted and the struggle ensued; that Maximino stepped on witness' foot and witness fell and Maximino wrested the stick from witness and struck him with it; that witness again got hold of the stick and while Maximino was trying to take it from him Severiano who was some eight or ten meters distant came up and wounded him in the side; that on the same afternoon the bruise made by the stick was examined by a physician who gave witness a prescription; that Maximino was a strong man, stronger than witness, stronger than Severiano; that this strength was almost equal to that of both Severiano and of witness.

The physician who examined the bruise and wrote the prescription referred to by Ventura Cruz testified to those facts. The record does not disclose who Eulogio Cruz was, nor what had happened to him. The wound in the breast was the only evidence of violence found on the body of deceased. The previous good character of defendant was shown.

As an abstract statement of law, the charge to the jury was substantially correct. It would have been more intelligible, however, if the jury had been told specifically what their verdict should be in the event of certain concrete findings of fact. Too much stress was laid on the distinctions between murder in the first degree and murder in the second degree and between express and implied malice and not enough on the difference between murder in the second degree and manslaughter. Even if it could be conceded that the district judge was justified in presenting the case as one of murder in the second degree the jury should have been told more plainly that, as between murder in the second degree and manslaughter, if they had any reasonable doubt upon the question of malice they should not find defendant guilty of the higher offense. Still viewing the case, for the sake of

argument only, from the same angle they should have been told that if they should find that Maximino Cruz was in fact the aggressor, and that the killing had been in fact done in the heat of passion aroused by Maximino's assault on defendant's father, then that assault would be adequate provocation (that is, provocation adequate to produce sudden passion), and that the facts so found would warrant a verdict of manslaughter. 29 C. J. 1141, section 124; 13 R.C.L. 793, section 97, and authorities cited in note 4.

We can not believe that if the jury had been so instructed they would have found defendant guilty of murder in the second degree. In any event, we are constrained to agree with appellant that the evidence as a whole can not be said to sustain such a verdict. It may justify a strong suspicion that Severiano Cruz acted out of resentment because of the rebuke administered or the unsought advice given by his uncle. It does not establish the element of malice beyond a reasonable doubt and defendant should have been given the benefit of that doubt.

The judgment appealed from must be reversed and the case remanded for a new trial.